**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| CURSETTA SWOOPE,<br><br>                   *Plaintiff*,<br>         -against-<br><br>REAL HOSPITALITY GROUP, LLC, *and*<br>JEANNINE GRAHAM, *individually*,<br><br>                   *Defendants*. | Case No.<br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT

### NATURE OF ACTION

1. Plaintiff Cursetta ("Elle") Swoope ("Plaintiff"), by her attorneys, Crumiller P.C., brings this action against Real Hospitality Group, LLC ("RHG") and Jeannine Graham (collectively, "Defendants") to remedy race discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*. ("Title VII"); 42 U.S.C. § 1981 *et seq*.; the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law §§ 290 *et seq*.; and the New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code § 8-101 *et seq.*

### PARTIES

2. Plaintiff Cursetta ("Elle") Swoope is a black woman residing in New York City, County of Kings. Plaintiff was employed by Defendants from on or about February 6, 2018, until her employment was terminated on June 13, 2019.

3. Defendant RHG is a limited liability corporation with a primary place of business located at 14 Wall Street, Suite 1600, New York, New York. RHG is a property management company which oversees a portfolio of hotels around the United States.

4. Defendant Jeannine Graham is the Regional Director for Sales & Marketing at RHG and is an individual who resides at 30 Andrews Drive, Massapeque Park, New York 11762.

## JURISDICTION AND VENUE

5. This Court has original jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1343.  This Court has supplemental jurisdiction over Plaintiff's state and city law claims pursuant to 28 U.S.C. § 1367.

6. Venue is proper in the Eastern District of New York pursuant to 29 U.S.C. § 1391(b)(2).

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

7. On November 14, 2019, Plaintiff filed a timely Charge of Discrimination ("Charge") with the U.S. Equal Employment Opportunity Commission ("EEOC").

8. On April 13, 2020, the EEOC issued Plaintiff a Notice of Right to Sue.

## LEGAL FRAMEWORK

9. Under Title VII, it is an unlawful employment practice for an employer to "discharge any individual, or otherwise to discriminate against any individual" with respect to the terms, conditions, or privileges of employment, because of the employee's race.  42 U.S.C. § 2000e-2(a)(1).

10. Under Title VII, it is an unlawful employment practice for an employer to "discharge any individual, or otherwise to discriminate against any individual" with respect to the terms, conditions or privileges of employment, because of the employee's participation in a protected activity. 42 U.S.C. § 2000e-3(a).

11. 42 U.S.C. § 1981 provides: "All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other." 42 U.S.C. § 1981(a).

12. Under 42 U.S.C. § 1981, like under Title VII, it is an unlawful employment practice for an employer to "discharge any individual, or otherwise to discriminate against any individual" with respect to the terms, conditions or privileges of employment, because of the employee's participation in a protected activity.

13. The NYSHRL provides that it shall be an unlawful discriminatory practice "to discharge from employment . . . or to discriminate against such individual in compensation or in terms, conditions or privileges of employment" on the basis of an individual's race.  N.Y. Exec. Law § 296(1)(a).

14. Under the NYSHRL, it shall be an unlawful discriminatory practice for an employer to retaliate or discriminate against any person because he or she has opposed any discriminatory practices. N.Y. Exec. Law § 296(7).

15. The NYCHRL similarly provides that it is unlawful for an employer to "discharge from employment" any person, or to "discriminate against such person . . . in terms, conditions or privileges of employment" on the basis of her race.  N.Y.C. Admin. Code § 8-107(1)(a)(2), (3).

16. Under the NYCHRL, it is unlawful for an employer to retaliate or discriminate against any person because such person has opposed any practice forbidden under the NYCHRL. N.Y.C. Admin. Code § 8-107(7).

## FACTUAL ALLEGATIONS

17. Plaintiff began working for RHG on or about February 6, 2018, as an Area Sales Manager for RHG at BKLYN House Hotel, Hotel RL Brooklyn, and The Brooklyn, A Hotel.

18. Plaintiff was told upon hire by Corporate Area Human Resources Manager Slyne Louissaint that she would be eligible for the Sales Department bonus incentive plan, the specific details of which would be provided by her direct report, Regional Director of Sales Jeannine Graham ("Graham").

19. Graham supervised Plaintiff and approximately 10 of her colleagues. Plaintiff's colleagues were Area Sales Managers for Manhattan hotels.

20. Plaintiff was the only black employee on the team.

21. In her role as Area Sales Manager, Plaintiff's job duties centered around the development and implementation of marketing strategies designed to grow business for her assigned hotel properties by selling event space and hotel rooms.

*Disparate Treatment*

22. Plaintiff was assigned to multiple properties and was responsible for a much larger workload than her non-black counterparts.

23. Plaintiff was not provided with a support position known as a Sales Coordinator. This created a disproportionate burden on Plaintiff's already-disparate workload, as compared to her non-black counterparts.

24. Graham failed to train Plaintiff on RHG's internal systems, and imposed unreasonable deadlines on Plaintiff by asking for complex property reports with short turnaround times.

25. Furthermore, despite the fact that Plaintiff was already covering three properties in Brooklyn, Graham asked her to assume responsibility for Lord & Moris, a Manhattan property, in late summer 2018. Graham's decision to entrust Plaintiff with a fourth location was a good indicator of her impression of Plaintiff's skills.

26. However, Lord & Moris was a new property and Plaintiff quickly discovered that she was not given the necessary resources to market the property effectively. Additionally, the property, located in Times Square, was geographically inconvenient for Plaintiff, who was based exclusively in Brooklyn.

27. Despite her repeated requests for assistance and marketing support, Plaintiff was given no relief until she had no choice but to inform Graham that she would no longer work on Lord & Moris.

28. Graham also assigned Plaintiff tasks which were outside of her job duties and which were significantly beneath her paygrade.

29. Plaintiff regularly informed Graham that the lack of support that her non-black counterparts relied upon was negatively impacting her ability to perform.

30. Eventually, Plaintiff was given room in the budget for one coordinator to assist her with all of her hotel properties, though she was never actually given the green light to hire someone into the position.

31. On multiple occasions, Plaintiff specifically requested direction, resources, and feedback on proposals she created regarding how to sustain her effectiveness.

32. However, Plaintiff received no meaningful response to these requests. Instead, Graham, who worked remotely and rarely visited the office, began treating Plaintiff worse than before.

33. For example, it was apparent to Plaintiff at the group meetings that Graham had a far greater knowledge of the activities of the other sales managers and their properties than she had of Plaintiff's properties, notwithstanding Plaintiff's frequent attempts to seek guidance from Graham.

34. Even in spite of the discriminatory treatment and lack of support, Plaintiff continued to perform well and succeed. On April 30, 2019, Plaintiff received an excellent performance review, meeting or exceeding expectations in every category. Graham signed off on this review.

35. Plaintiff developed innovative solutions to accomplish her objectives. For example, Plaintiff helped to drive business to Hotel RL in Bushwick by creating an Instagram account specifically for the hotel's event space.

36. Plaintiff and the hotel's Area General Manager Andre Hammond relied heavily on this Instagram account to drive event sales, and in turn, to drive up room sales as well.

37. This Instagram account highlighted the hotel's upcoming and past events by featuring pictures of the events, many of which featured people of color, a key demographic of that location.

38. On May 30, 2019, Plaintiff was asked to surrender the Instagram account and cease posting to it because, as Graham put it, the Company needed to stay "on brand."

39. After the Company took over the Instagram account, it promptly shifted its photo selection to depict mainly white people in the event space, despite the fact that events at this

location were mainly hosted and attended by people of color. This demonstrated to Plaintiff that the Company perceived white people to be "on brand" and black and brown people to be off brand.

40. As a result of the insufficient support she received and the disproportionate amount of responsibilities with which she was tasked, Plaintiff worked longer hours and weekends than she would have with the proper support, going above and beyond to avoid any perceived misstep, which caused her a great deal of stress, anxiety and exhaustion.

41. Graham also made disapproving remarks about Plaintiff's box braids – an ethnic style that is popular throughout African, African-American, and African Diaspora culture.

42. These comments marginalized Plaintiff from her exclusively non-black counterparts, whom Graham did not subject to personal disapproving remarks about their own hairstyles.

***Unpaid Commissions***

43. Plaintiff's offer letter from RHG states that she was eligible for the Company's sales department bonus incentive plan, the details of which were to be provided by her direct supervisor.

44. Plaintiff therefore asked Graham to provide the details of the incentive plan to her on numerous occasions, which Graham failed to do for nearly an entire year, until January 2019.

45. However, even after that, and despite her impressive sales, Plaintiff was never paid any bonuses through the sales incentive plan. Nor has Plaintiff ever been paid for the out-of-pocket work expenses she incurred.

***Protected Activity, Retaliation, and Pretextual Termination***

46. On or about June 1, 2019, when Plaintiff arrived onsite, she encountered Chief Operations Officer John Parker and Area General Manager Andre Hammond engaged in a

discussion about the business. Though she was not aware of the purpose of the meeting, given Parker's seniority at RHG, Plaintiff joined Parker and Hammond to see if she could offer any assistance or provide any contributions to the conversation. Hammond then invited Plaintiff to discuss any concerns she had regarding her position. Fearful for her job security, Plaintiff was reticent to complain, and initially declined to do so. However, Hammond then pressured Plaintiff to share with Parker some concerns that Hammond had previously heard Plaintiff share privately, regarding the disparate treatment she had suffered and her unpaid wages. Unsure of how else to respond, Plaintiff then reported to Parker her complaints regarding the disparate treatment and the unpaid wages, as well as her opinion that Defendant's treatment of her, and its failure and refusal to pay her promised wages, constituted objectionable behavior.

47. On June 13, 2019, within two weeks of this complaint, the Company terminated Plaintiff's employment. Plaintiff was handed a letter, signed by Hammond, which expressly stated that the termination was completely unrelated to Plaintiff's job performance. Rather, the letter claimed Plaintiff's position had been eliminated.

48. However, that statement was false. Later that same day, while browsing Google Search, Plaintiff saw that Defendants had listed, as available, a nearly identical job position at the location where she had worked. The posting was for an Area Director of Sales position, and the duties were identical to the ones Plaintiff had been performing as Area Sales Manager. In fact, the job posting indicated that the position would report to General Managers and the Corporate Regional Sales Director, *i.e.*, the exact same people to whom Plaintiff had reported up until her termination. Furthermore, the posting specified that the role would supervise the overall sales efforts for the Brooklyn properties, which is exactly what Plaintiff had been doing throughout the period of her employment.

49. Plaintiff later learned that her white male colleague, Andrew Massetti, who, like Plaintiff, previously held the Sales Manager position, had been promoted to the Area Director of Sales role and the Company hired a new white male employee, John Bock, to fill the position which the promotion had made available.

50. At no point was Plaintiff asked if she would be interested in assuming the Area Director of Sales position, despite the fact that Plaintiff had been told before her termination that she would eventually assume responsibility for the two new properties in Brooklyn, one of which she had been discussing with management for months. Yet, at her termination, she was informed that there would not be an open position until later in the year. Thus, when Plaintiff saw that the position was posted *that same day*, she was understandably confused and upset that Defendants had not been truthful about why her employment was terminated.

## FIRST CAUSE OF ACTION:
### Discrimination in Violation of Title VII
*Against Corporate Defendant*

51. Plaintiff repeats and realleges each and every allegation set forth above with the same force and effect as if fully set forth herein.

52. Defendant unlawfully discriminated against Plaintiff in the terms and conditions of her employment by terminating her on the basis of her race in violation of Title VII.

53. Defendant's discriminatory acts caused Plaintiff to suffer economic damages, including lost wages, commissions, and benefits, as well as emotional and physical distress.

54. Defendant acted with malice and/or reckless indifference to Plaintiff's rights, entitling her to an award of punitive damages.

55. Therefore, Defendant is liable to Plaintiff for back pay, front pay, emotional distress and other compensatory damages, punitive damages, prejudgment interest, post-judgment interest, attorneys' fees, costs and disbursements.

## SECOND CAUSE OF ACTION:
### Retaliation in Violation of Title VII
*Against Corporate Defendant*

56. Plaintiff repeats and realleges each and every allegation set forth above with the same force and effect as if fully set forth herein.

57. Defendant unlawfully retaliated against Plaintiff by terminating her employment on the basis of her protected activity including but not limited to the activities listed in paras. 44 and 46 in violation of Title VII.

58. Defendant's unlawful retaliatory acts caused Plaintiff to suffer economic damages, including lost wages as well as emotional distress damages.

59. Defendant acted willfully, with malice and/or reckless indifference to Plaintiff's rights, entitling Plaintiff to an award of punitive damages.

60. Therefore, Defendant is liable to Plaintiff for back pay, front pay, emotional distress and other compensatory damages, punitive damages, prejudgment interest, post-judgment interest, attorneys' fees, costs and disbursements.

## THIRD CAUSE OF ACTION:
### Discrimination in Violation of the 42 U.S.C. § 1981
*Against Both Defendants*

61. Plaintiff repeats and realleges each and every allegation set forth above with the same force and effect as if fully set forth herein.

62. Defendants improperly discriminated against Plaintiff in the terms and conditions of her employment by improperly terminating her employment on the basis of her race in violation of 42 U.S.C. § 1981.

63. As described herein, Defendant Graham is personally and directly liable in that she aided and abetted the corporate Defendant in its unlawful discriminatory acts against Plaintiff, in violation of 42 U.S.C. § 1981.

64. Alternatively, in terms of the economic realities of the workplace, Defendant Graham is personally and directly liable as an employer for the unlawful discrimination against Plaintiff in violation of 42 U.S.C. § 1981.

65. Defendants' discriminatory acts caused Plaintiff to suffer economic damages, including lost wages, commissions, and benefits, as well as emotional and physical distress.

66. Defendants acted with malice and/or reckless indifference to Plaintiff's rights, entitling her to an award of punitive damages.

67. Therefore, Defendants are jointly and severally liable to Plaintiff for back pay, front pay, emotional distress and other compensatory damages, punitive damages, prejudgment interest, post-judgment interest, attorneys' fees, costs and disbursements.

## FOURTH CAUSE OF ACTION:
### Retaliation in Violation of the 42 U.S.C. § 1981
*Against Both Defendants*

68. Plaintiff repeats and realleges each and every allegation set forth above with the same force and effect as if fully set forth herein.

69. Defendants unlawfully retaliated against Plaintiff by terminating her employment on the basis of her protected activity including but not limited to the activities listed in paras. 44 and 46 in violation of 42 U.S.C. § 1981.

70. As described herein, Defendant Graham is personally and directly liable in that she aided and abetted the corporate Defendant in its unlawful retaliatory acts against Plaintiff, in violation of 42 U.S.C. § 1981.

71. Alternatively, in terms of the economic realities of the workplace, Defendant Graham is personally and directly liable as an employer for the unlawful retaliation against Plaintiff in violation of 42 U.S.C. § 1981.

72. Defendants' unlawful retaliatory acts caused Plaintiff to suffer economic damages, including lost wages as well as emotional distress damages.

73. Defendants acted willfully, with malice and/or reckless indifference to Plaintiff's rights, entitling Plaintiff to an award of punitive damages.

74. Therefore, Defendants are jointly and severally liable to Plaintiff for back pay, front pay, emotional distress and other compensatory damages, punitive damages, prejudgment interest, post-judgment interest, attorneys' fees, costs and disbursements.

### FIFTH CAUSE OF ACTION:
**Discrimination in Violation of the NYSHRL**
*Against Both Defendants*

75. Plaintiff repeats and realleges each and every allegation set forth above with the same force and effect as if fully set forth herein.

76. Defendants improperly discriminated against Plaintiff in the terms and conditions of her employment by improperly terminating her employment on the basis of her race in violation of the NYSHRL.

77. As described herein, Defendant Graham is personally and directly liable in that she aided and abetted the corporate Defendant in its unlawful discriminatory acts against Plaintiff, in violation of NYSHRL § 296(6).

78. Alternatively, in terms of the economic realities of the workplace, Defendant Graham is personally and directly liable as an employer for the unlawful discrimination against Plaintiff in violation of NYSHRL § 296(1).

79. Defendants' discriminatory acts caused Plaintiff to suffer economic damages, including lost wages, commissions, and benefits, as well as emotional and physical distress.

80. Defendants acted with malice and/or reckless indifference to Plaintiff's rights, entitling her to an award of punitive damages.

81. Therefore, Defendants are jointly and severally liable to Plaintiff for back pay, front pay, emotional distress and other compensatory damages, punitive damages, prejudgment interest, post-judgment interest, attorneys' fees, costs and disbursements.

## SIXTH CAUSE OF ACTION:
### Retaliation in Violation of the NYSHRL
*Against Both Defendants*

82. Plaintiff repeats and realleges each and every allegation set forth above with the same force and effect as if fully set forth herein.

83. Defendants unlawfully retaliated against Plaintiff in the terms and conditions of her employment and by terminating her employment on the basis of her protected activities, in violation of NYSHRL.

84. As described herein, Defendant Graham is personally and directly liable in that she aided and abetted the corporate Defendant in its unlawful retaliatory acts against Plaintiff, in violation of NYSHRL § 296(6).

85. Alternatively, in terms of the economic realities of the workplace, Defendant Graham is personally and directly liable as an employer for the unlawful retaliation against Plaintiff in violation of NYSHRL § 296(1).

86. Defendants' unlawful retaliatory acts caused Plaintiff to suffer economic damages, including lost wages as well as emotional distress damages.

87. Defendants acted willfully, with malice and/or reckless indifference to Plaintiff's rights, entitling her to an award of punitive damages.

88. Therefore, Defendants are jointly and severally liable to Plaintiff for back pay, front pay, emotional distress and other compensatory damages, punitive damages, prejudgment interest, post-judgment interest, attorneys' fees, costs and disbursements.

## SEVENTH CAUSE OF ACTION:
### Discrimination in Violation of the NYCHRL
*Against Both Defendants*

89. Plaintiff repeats and realleges each and every allegation set forth above with the same force and effect as if fully set forth herein.

90. Defendants improperly discriminated against Plaintiff in the terms and conditions of her employment, and improperly terminated her employment on the basis of her race in violation of the NYCHRL.

91. As described herein, Defendant Graham is personally and directly liable in that she aided and abetted the corporate Defendant in its unlawful discriminatory act against Plaintiff, in violation of NYCHRL § 8–107(6).

92. Alternatively, in terms of the economic realities of the workplace, Defendant Graham is personally and directly liable as an employer for the continuing unlawful discrimination against Plaintiff in violation of NYCHRL § 8–107(1)(a).

93. Defendants' discriminatory acts caused Plaintiff to suffer economic damages, including lost wages, commissions, and benefits, as well as emotional and physical distress.

94. Defendants acted with malice and/or reckless indifference to Plaintiff's rights, entitling her to an award of punitive damages.

95. Therefore, Defendants are jointly and severally liable to Plaintiff for back pay, front pay, emotional distress and other compensatory damages, punitive damages, prejudgment interest, post-judgment interest, attorneys' fees, costs and disbursements.

## EIGHTH CAUSE OF ACTION:
### Retaliation in Violation of the NYCHRL
### *Against Both Defendants*

96. Plaintiff repeats and realleges each and every allegation set forth above with the same force and effect as if fully set forth herein.

97. Defendants unlawfully retaliated against Plaintiff in the terms and conditions of her employment and terminated her employment on the basis of her race in violation of NYCHRL.

98. As described herein, Defendant Graham is personally and directly liable in that she aided and abetted the corporate Defendant in its unlawful retaliatory act against Plaintiff, in violation of NYCHRL § 8–107(6).

99. Alternatively, in terms of the economic realities of the workplace, Defendant Graham is personally and directly liable as an employer for the continuing unlawful retaliation against Plaintiff in violation of NYCHRL § 8–107(1)(a).

100. Defendants' unlawful retaliatory acts caused Plaintiff to suffer economic damages, including lost wages as well as emotional distress damages.

101. Defendants acted willfully, with negligence or reckless indifference to Plaintiff's rights, entitling her to an award of punitive damages.

102. Therefore, Defendants are jointly and severally liable to Plaintiff for back pay, front pay, emotional distress and other compensatory damages, punitive damages, prejudgment interest, post-judgment interest, attorneys' fees, costs and disbursements.

## DEMAND FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment that:

a) Declares that the discriminatory and retaliatory actions, practices, and policies of Defendants as set forth above violated Title VII, 42 U.S.C. § 1981, the NYSHRL, and the NYCHRL;

b) awards monetary damages to Plaintiff to compensate her for the discrimination and retaliation she experienced, including economic damages and damages for emotional distress;

c) awards Plaintiff punitive damages pursuant to Title VII and the NYCHRL and 42 U.S.C. § 1981;

d) awards Plaintiff reasonable attorneys' fees and costs in this action; and

e) grants such other relief as this Court deems just and proper.

## DEMAND FOR TRIAL BY JURY

Pursuant to FRCP § 38(b), Plaintiff demands a trial by jury.

Dated: New York, New York
May 18, 2020

Respectfully submitted,

Crumiller P.C.

By: _____
Chloe Liederman
222 Broadway, 19th Floor
New York, NY 10038
(212) 390-8480
cl@crumiller.com
*Attorneys for Plaintiff*

16